UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JUSTINE G.,

                Plaintiff,

      v.                                           **DECISION AND ORDER**
                                                                   21-CV-6701S

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

      1.      Plaintiff Justine G.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits under Title II of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff filed her application for benefits on January 12, 2021. (R.[2] at 73.) Plaintiff alleged disability beginning on May 10, 2019, due to PTSD, anxiety, and depression. (R. at (73.) Plaintiff's application was denied. Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). ALJ Jennifer Gale Smith held a telephonic hearing on August 3, 2021, at which Plaintiff, represented by her attorney, appeared and testified. (R. at 35-71.) Vocational expert Sakinah Malik also testified at the hearing. At the time of the hearing, Plaintiff was 33 years old, with a college education, and past work experience as a military intelligence clerk, administrative assistant, cook and counter driver, and laundry attendant. (R. at 83.)

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by her first name and last initial.

[2] Citations to the underlying administrative record are designated as "R."

3.      The ALJ considered the case de novo and, on August 11, 2021, issued a written decision denying Plaintiff's application for benefits. (R. at 21-30.) On October 1, 2021, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on November 17, 2021, challenging the Commissioner's final decision.[3]

4.      Both parties moved for judgment on the pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket Nos. 8, 10.) Plaintiff filed a response on March 11, 2022 (Docket No. 11), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Defendant's motion is granted, and Plaintiff's motion is denied.

5.      A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[3] The ALJ's August 11, 2021, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

6. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant

>    has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity from her alleged onset date of May 10, 2019, through her date last insured of December 31, 2019. (R. at 23.) At step two, the ALJ found that Plaintiff has the severe impairments of asthma, an adjustment disorder, bipolar disorder, an anxiety disorder, a personality disorder, obsessive compulsive disorder, and PTSD. (Id.)

11. The ALJ then found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments in 20.C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R. at 24.)

12. Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following limitations:

> [s]he should have had no more than occasional concentrated exposure to respiratory irritants such as dust, odors, fumes, gases, wetness, humidity and temperature extremes. [She] should have worked in a low-stress job, defined as occasional decision-making, occasional judgment required and occasional changes in the work setting. She should have worked at goal-oriented work rather than production-pace-rate work. [She] was limited to work that did not require more than simple, short interactions with supervisors or coworkers; and did not require contact with the public. Although she could work in proximity to others, the tasks performed should not have required working in conjunction with others and should predominantly have involved working with objects rather than people.

(R. at 25-26.)

13. At step four, the ALJ found that Plaintiff has no past relevant work. (R. at 28.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 29.) Accordingly, the ALJ found that Plaintiff is not disabled. (Id.)

14. Plaintiff argues, generally, that the ALJ's RFC is unsupported by substantial evidence given the record of Plaintiff's limitations and that neither the ALJ nor the Appeals Council properly assessed the medical opinions in the record. Defendant argues that the ALJ's opinion is supported by substantial evidence.

15. Plaintiff reported that she had been fired from almost every job she had. (R. at 49.) She testified that she was terminated from one job for assaulting a co-worker. (R. at 51.) Another employer threatened to terminate her due to a customer's complaints about her attitude. (R. at 49-50.) She also testified that she was fired from some jobs for calling in sick too much, due to her emotional issues. (R. at 52.)

16. The record contains mixed evidence of Plaintiff's mental health issues. At medical visits during the relevant period—between May 10, 2019, and December 31, 2019—care providers also regularly noted normal mental health signs alongside Plaintiff's PTSD symptoms. On February 25, 2019, Plaintiff told VA psychiatrist Alicia Saldana that she had difficulty coming to her appointments due to her PTSD. (R. at 479.) She was off her medications due to her pregnancy and stated that this made her hypervigilant and guarded. (Id.) At the same visit, she denied depression and had otherwise normal mental health signs. (Id.)

17. On May 17, 2019, Plaintiff reported that she had just been offered a new job. (R. at 448.) She told counselor Melissa Schwab that she was unsure what to do, noting that it would be hard to work with a new baby but not referencing any mental health limitations. (Id.) On June 14, 2019, she reported an increase in anxiety, but Melissa Schwab noted normal mental health signs. (R. at 439.) On July 17, 2019, Plaintiff denied depression or anxiety, was clear in her thoughts and speech, and had no mood disturbance. (R. at 419.) On July 23, 2019, counselor Melissa Schwab noted intact mental health signs. (R. at 413.) On August 13, 2019, she was considering taking a trip with a friend had and normal mental health findings. (R. at 409-10.) On August 30, 2019, she denied depression, but reported that she had no support system. (R. at 401.) On

September 3, 2019, she reported that she had had a rough night with the baby, but on September 13, 2019, she was feeling "better" and was planning to start an exercise class. (R. at 397.)

18. Shortly after the relevant period, she attended a parent child swim class—she reported that she found it difficult socially but did in fact manage to attend it. (R. at 388.) The record also shows that she led a book group, attended a veterans' Christmas party with her daughter, and hosted a birthday party for her daughter at which she was pleased with the "turnout." (R. at 340, 391, 796.) On October 26, 2020, she reported to a Veterans Administration provider that she was not seeking employment and wanted to focus on raising her child. (R. at 352.)

19. Nurse Susan Provorse visited Plaintiff and her baby regularly. Her notes indicate that Plaintiff was doing well with parenting. Plaintiff told Provorse on December 23, 2019, that she was doing well and saw friends occasionally. (R. at 645.) She also told Provorse that she did not want to work until her daughter was in school. (Id.) On January 8, 2020, Plaintiff was doing well and in good spirits, and reported that she saw friends occasionally. (R. at 647.) Plaintiff regularly told Provorse that she was doing well. (R. at 656, 664, 668, 672.) In May 2020, Plaintiff was able to obtain a loan and buy a house. (R. at 375.)

20. Peer counselor Manny Welch noted that Plaintiff was calm, pleasant and goal directed. (R. at 796.) On January 13, 2021, Plaintiff told Welch she was helping moderate a sober mothers' book discussion group. (R. at 811.) She told Welch that she hoped to find part-time employment once her daughter was in preschool. (R. at 804.)

21.     On June 14, 2019, VA psychologist William Reynolds performed a PTSD assessment of Plaintiff. (R. at 435.) He opined that she had "total occupational and social impairment" due to her PTSD symptoms of increased arousal, avoidance of stimuli, and difficulty interacting with others. (R. at 434-38.)

22.     Plaintiff's first set of arguments focuses on how the ALJ assessed her limitations. She first argues that the ALJ's finding that she was capable of brief interactions with supervisors and co-workers is not supported by substantial evidence, and that the ALJ failed to account for her limitations in attention and maintaining attendance at a job.

23.     As to Plaintiff's limitations in interacting with others, Plaintiff does not dispute the ALJ's finding that she was moderately limited in this area.[4] Rather, she argues that the limitation to no interactions with the public and only simple, short interactions with superiors and co-workers does not adequately account for her moderate limitation in this area.

24.     This Court disagrees. A limitation to unskilled work can adequately account for a claimant's moderate limitations in interacting with others. See, e.g., Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (RFC for unskilled work was supported, where claimant had no more than moderate limitations); Nathan P. v. Comm'r of Soc. Sec., No. 19-CV-954SR, 2021 WL 1139849, at *5–6 (W.D.N.Y. Mar. 25, 2021) (a moderate limitation in a plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors is consistent with an RFC limiting plaintiff to unskilled work); Poles v. Berryhill,

---

[4] The levels of impairment are none, mild, moderate, marked, and severe. See 20 C.F.R. § 1420(a) ("When we rate your degree of limitation in these areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.")

8

17-CV-6189, 2018 WL 1471884, at *4 (W.D.N.Y. March 26, 2018) (ALJ's failure to expressly incorporate moderate limitation in ability to interact appropriately with supervisors into RFC finding was harmless error where VE testified that such a limitation would not impact an individual's ability to perform unskilled work); Washburn v. Colvin, 286 F. Supp. 3d 561, 565-566 (W.D.N.Y. 2017) (failure to incorporate moderate limitation in ability to accept instruction and respond appropriately to criticism from supervisors harmless error where RFC limited plaintiff to unskilled work); Call v. Comm'r, 16-CV-1003, 2017 WL 2126809, at * 5 (N.D.N.Y. May 16, 2017) (moderate limitation in ability to interact appropriately with supervisors does not preclude the ability to perform unskilled work).

25. Moreover, such a moderate limitation can also be accommodated by a restriction to occasional interaction with supervisors. Nathan P. v. Comm'r of Soc. Sec., No. 19-CV-954SR, 2021 WL 1139849, at *5–6 (citing Gomez v. Comm'r of Soc. Sec., 18-CV-96, 2020 WL 1322565, at *3 (W.D.N.Y. March 20, 2020) (ALJ suitably translated moderate limitation in ability to interact appropriately with supervisors by limiting plaintiff to occasional interaction with supervisors)); Reilly v. Colvin, 13-CV-785, 2015 WL 6674955, at *3 (W.D.N.Y. Nov. 2, 2015) (restriction to occasional contact sufficient to account for moderate limitations)).

26. Plaintiff also argues that the ALJ's RFC fails to account for her moderate limitation in attention and concentration. But, as above, courts regularly hold that such a limitation can be accounted for by a limitation to routine or unskilled work. See, e.g., Zabala, 595 F.3d at 410; Matta v. Astrue, 508 Fed. Appx. 53, 55 (2d Cir. 2013) ("[t]he ALJ found that plaintiff had moderate difficulties in concentration, persistence and pace and moderate difficulties in social functioning that limit [him] to simple, routine, low-stress, and

9

unskilled tasks, which involve no more than minimal contact with co-workers, supervisors and the general public.") (internal quotation omitted); Whipple v. Astrue, 479 Fed. Appx. 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment).

27. Plaintiff argues that the evidence of her prior work outbursts demonstrates that the RFC is incorrect. But because her prior jobs were not performed at the RFC level, her performance there is not necessarily persuasive evidence that she cannot perform at the RFC level.

28. Plaintiff's second argument is that the ALJ and the Appeals Council improperly considered the opinions in the record. She first argues that the ALJ should have given more weight to the opinion of VA physician Dr. William Reynolds, and less weight to the opinions of agency psychologists Dr. M. Juriga and Dr. T. Inman. But this Court finds no error in the ALJ's assessment of these opinions.

29. Under the regulations relevant to Plaintiff's application for benefits, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), ... including those from your medical sources," but will rather consider whether those opinions are persuasive by primarily considering whether the opinions are supported by and consistent with the record in the case. 20 C.F.R. § 416.920c(a).

30. An ALJ must articulate in his or her determination how persuasive he or she finds all of the medical opinions and explain how he or she considered the supportability

and consistency of those opinions. 20 C.F.R. § 416.920c(b). Regarding supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical findings(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Regarding consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

31.     The ALJ may also, but is not required to, explain how he or she considered other factors related to the source's relationship with the claimant, including the length of any treatment relationship, the frequency of examinations by the source, the purpose and extent of the treatment relationship, whether the source had an examining relationship with the claimant, whether the source specializes in an area of care, and any other factors that are relevant to the persuasiveness of that source's opinion. 20 C.F.R. § 416.920c(c).

32.     Here, the ALJ found the opinion of Dr. Reynolds to be unpersuasive for several reasons. First, the ALJ found that was not consistent with record evidence showing regular normal mental health findings. (R. at 27.)  It was within the ALJ's purview to make this assessment, and given the existence of normal mental health findings during the relevant period, this Court finds no error. See Woodmancy v. Colvin, 577 F. App'x 72, 75 (2d Cir. 2014) (summary order) (record evidence of unremarkable clinical findings contradicted or failed to support the limitations conclusions in medical opinions).

33. Likewise, Drs. Juriga and Inman based their opinions on consistently normal mental health observations by clinicians, citing record evidence, and, as above, the ALJ was entitled to consider this consistency in determining the persuasiveness of these opinions.

34. Plaintiff argues that the ALJ should have considered other evidence in the record—namely reports of altercations while in PTSD treatment in 2018 and her issues with PTSD and irritability with others—and found that this evidence supported Dr. Reynolds and undercut Drs. Juriga and Inman. (Docket No. 8-1 at pp. 11-12.) But, when faced with conflicts in the evidence, as here, it is the ALJ's job to resolve those conflicts. "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, [an ALJ is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (citing Richardson, 402 U.S. at 399 ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")).

35. Finally, Plaintiff argues that the Appeals Council erred in not considering the opinions of peer counselor Manny Welch, and nurse Susan Provorse, both of which she submitted after issuance of ALJ's decision.

36. The Appeals Council, in reviewing a decision based on an application for benefits, will consider new evidence only if (1) the evidence is material, (2) the evidence relates to the period on or before the ALJ's hearing decision, and (3) the Appeals Council finds that there is a reasonable probability that the additional evidence would change the outcome of the decision. 20 C.F.R. § 404.970.

37. Here, the AC found there was not such a probability, and this Court agrees. Welch observed that Plaintiff was polite, cooperative and intelligent much of the time, but had fluctuating moods and could be easily irritated. (R. at 8.) He noted that she had lost most jobs due to emotional outbursts and opined that these outbursts were work-preclusive. (R. at 9.) This Court finds that none of these observations constitutes new or material information, nor do they "indicate that [Plaintiff's] condition was more serious than previously thought." Klos v. Comm'r of Soc. Sec., 439 F. App'x 47, 48 (2d Cir. 2011).

38. Provorse opined on September 9, 2021, that Plaintiff was markedly limited in maintaining attention and concentration, maintaining a schedule, interacting with the general public, reacting to criticism from supervisors, getting along with co-workers, and responding to ordinary stressors in a setting with simple tasks, among other things. (R. at 10-11.) She also opined that Plaintiff would be off task more than 33% of the time. (R. at Provorse noted that she had witnessed outbursts in public settings, when Plaintiff was interacting with others or felt rushed, judged, or stressed. (Id.) None of these opinions has a likelihood of changing the outcome of the ALJ's decision. As discussed above, any issues with social interactions or feeling rushed are addressed by the RFC for unskilled, non-production pace work with limited contact with supervisors and co-workers. Further, Provorse's opinion of Plaintiff's limitations is not consistent with other evidence in the record, including Provorse's notes of her meetings with Plaintiff during the relevant period. Therefore, the Appeals Council did not err in finding that Provorse's opinion did not have a reasonable probability of changing the outcome of the ALJ's decision.

39. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. The decision contains an adequate

discussion of the medical evidence supporting the ALJ's determination that Plaintiff was not disabled, and Plaintiff's aforementioned contentions are unavailing. Plaintiff's Motion for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED.

FURTHER, that the Clerk of Court is DIRECTED to close this case.

SO ORDERED.

Dated:   March 22, 2023
         Buffalo, New York

                                              s/William M. Skretny
                                           WILLIAM M. SKRETNY
                                          United States District Judge